IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **ANTHONY OLLEN ROYSTER** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. **PJM 10-2121** |
| | * | |
| **GORDON SCHLUDERBERG, JR., et al.** | * | |
| | * | |
| Defendants. | * | |

## MEMORANDUM OPINION

Anthony Ollen Royster has sued Gordon Schluderberg, Jr. and Jeffrey DiPaola, both Baltimore City police officers, for civil rights violations arising out of Schluderberg's allegedly inappropriate use of deadly force in the course of arresting him. Royster alleges that DiPaola, in a cover-up effort, lied about the shooting in the police report and the application for statement of charges. Defendants' have filed a Motion for Summary Judgment (Paper No. 76). Following oral argument, the Court **DENIED** the Motion as to Schulderberg, but did not address the claim as to DiPaola. The Court now addresses Royster's claims against DiPaola. While Defendants' Motion has been **DENIED** as to the claims against Schluderberg (Counts 1 and 2), the Court now **GRANTS** the Motion for Summary Judgment as to the claim against DiPaola (Count 3).

**I.**

On a motion for summary judgment, the Court views the evidence in the light most favorable to Royster and draws all reasonable inferences in his favor. *Henry v. Purnell*, 652 F.3d 524, 527 (4th Cir. 2011) (en banc).

These are the undisputed facts: At approximately 3:00AM on September 12, 2007, Royster was enjoying a drink with some friendly acquaintances or, as he put it in his deposition, he was "outside on Reisterstown Road drinking on a homeboy['s] porch." As he prepared to

leave, he saw "the police was [sic] riding up . . . Hilldale" Road, and "instead of walking forward to them, because of harassment [sic] I turned around and ran the other way." Royster says that at some point he realized that the officer he believed was DiPaola was chasing him on foot; Royster, however, continued to run. He made his way through a house and continued to run into an open field, when suddenly he felt a bullet hit him in the back, and he fell to the ground. Royster says he cannot remember anything after he fell. Schluderberg, who was actually chasing him, not DiPaola, had indeed shot Royster in the back.

Schluderberg has testified to a fact that Royster denies, i.e., that Royster drew a gun before running away and, while running, was beginning to turn around to face Schluderberg, after which Schluderberg shot him once in the back. Although Royster denies having a gun, he concedes that, based on the incident, he was convicted in the Circuit Court for Baltimore City of possessing a handgun by a disqualified person.[1]

As for DiPaola, Royster alleges that he "participated in an effort to cover up the unreasonableness of . . . Schluderberg's action," thereby violating Royster's "right to Substantive Due Process under the Fifth and Fourteenth Amendments to the United States Constitution." First Am. Compl. ¶ 47. Royster asserts that DiPaola *knew* he was creating false documentation of the incident in order to help Schluderberg. Alternatively, he alleges that DiPaola was grossly negligent, and acted "with deliberate or reckless indifference" to his "right to substantive due process." Specifically, says Royster, DiPaola drafted an Application for Statement of Charges and a police report in which he stated that Royster pointed a gun at Schluderberg, even though DiPaola did not see it happen and only subsequently learned that it did not actually happen. First Am. Compl. ¶¶ 50-53. It was DiPaola's supposedly fraudulent report, according to Royster, that

---

[1] The dispute arising from these dueling accounts was the basis for the Court's denial of Schluderberg's Motion for Summary Judgment.

2

led the State's Attorney for Baltimore City to charge Royster with first and second-degree assault, charges of which he was ultimately acquitted.  First Am. Compl. ¶ 56.

## II.

DiPaola argues that he is entitled to qualified immunity because Royster's claim against him is not grounded in any recognized constitutional right, or alternatively that the right was not clearly established.  The Court agrees with DiPaola as to both arguments.

A qualified immunity inquiry consists of two steps: first, the Court asks whether a constitutional violation occurred; and second, it asks whether the right violated was clearly established.  *Henry*, 652 F.3d at 531.  There is no dispute as to the facts Royster alleges vis-à-vis DiPaola.

That said, DiPaola is entitled to qualified immunity as a matter of law.  He committed no constitutional violation because there is absolutely no evidence to suggest that he *knowingly* made a false report.  Royster's First Amended Complaint merely says that "[u]pon information and belief, Ofc. DiPaola subsequently learned that [Royster] did not point a handgun at Sgt. Schluderberg," but fails to substantiate that claim with any factual allegations or citations to the record.  That, quite simply, is the end of the matter.  It is not a violation of the Constitution for a police officer to file a report, even if wrong, relying on a fellow officer's account; indeed, several courts that have considered claims similar to the one made here have emphasized that the defendant law enforcement officer must have *known* that he or she was constructing a fraudulent report in order to give rise to a constitutional claim.  *See Shock v. Tester*, 405 F.2d 852, 855 (8th Cir. 1969) ("[T]he plaintiff's claim appears to be that the patrolmen, acting under color of law, denied the plaintiff due process and equal protection of the laws by *knowingly and intentionally* preparing, filing and failing to correct a false accident report.") (emphasis added) (footnote

omitted); *Landrigan v. City of Warwick*, 628 F.2d 736, 744 (1st Cir. 1980) (affirming dismissal of a § 1983 claim arising out of "the filing of *deliberately* false police reports concerning the incident with the records of the police departments") (emphasis added); *Lawrence v. City of St. Paul*, 740 F. Supp. 2d 1026, 1038 (D. Minn. 2010) ("Lawrence contends that the police defendants conducted a sham investigation of Lawrence in which Willner's account of the events was *deliberately and falsely bolstered* in an attempt to trump up charges against Lawrence.") (emphasis added). Without evidence to support the assertion that DiPaola *knowingly* created a false report, Royster has shown no constitutional violation.

Even if DiPaola here seems to have committed a constitutional violation, Royster has not shown that the mere filing of a false, i.e. inaccurate, police report gives rise to a violation of a clearly established right. Put another way, there is no clearly established constitutional right to have accurate police reports, and Royster cites no case so holding. Quite to the contrary, in the few reported opinions addressing § 1983 claims arising out of false police reports, federal courts have reiterated that there is no clearly established constitutional right to accurate police reports. *See Landrigan*, 628 F.2d at 744-45 ("[W]e do not see how the existence of a false police report, sitting in a drawer in a police station, by itself deprives a person of a right secured by the Constitution and laws. If action is subsequently taken on the basis of that report, or if the report is disseminated in some manner, plaintiff's constitutional rights may well then be violated . . . and in that event a section 1983 action *may* lie.") (emphasis added); *Lawrence*, 740 F. Supp. 2d at 1039 ("[T]he Court finds that it was not clearly established—and, indeed, that it is still not clearly established—that an unfair or dishonest investigation that does not result in a deprivation of life, liberty, or property violates the Constitution.").

DiPaola is entitled to qualified immunity.

Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment (Paper No. 76) as to all claims against DiPaola, but reaffirms its **DENIAL** it as to Royster's claims against Schluderberg.

A separate Order will **ISSUE**.

                                                                                  /s/
                                            **PETER J. MESSITTE**
**February 28, 2013**                            **UNITED STATES DISTRICT JUDGE**